ELECTRONIC CITATION:  2004 FED App. 0006P (6th Cir.)
File Name:  04b0006p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:  SIMMS CONSTRUCTION SERVICES CO., INC., | ) ) ) |
| Debtor. | ) ) |
| ———————————————— | ) ) |
| HAROLD A. CORZIN, TRUSTEE, | ) ) |
| Plaintiff-Appellee, | ) ) |
| v. | )  No. 03-8074 |
| DECKER, VONAU, SYBERT & LACKEY, CO., L.P.A., | ) ) ) |
| Defendant-Appellant. | ) ) |
| ———————————————— | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Akron.
No. 97-50601, Adv. No. 99-5055.

Argued: May 5, 2004

Decided and Filed:  July 8, 2004

Before: COOK, GREGG, and LATTA, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Robert James Morje, Columbus, Ohio, for Appellant.  Jerome Cox, ROETZEL & ANDRESS, Akron, Ohio, for Appellee.  **ON BRIEF:**  Robert James Morje, Columbus, Ohio, for Appellant.  Jerome Cox, ROETZEL & ANDRESS, Akron, Ohio, for Appellee.

_____

**OPINION**

_____

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. Appellant, Decker, Vonau, Sybert, & Lackey, Co., L.P.A. ("Decker"), provided prepetition legal services to the Debtor, Simms Construction Services Co., Inc. ("Simms Construction"). Decker received payment for those services from the proceeds of an arbitration award during the ninety days preceding Simms Construction's bankruptcy filing. Harold A. Corzin, plaintiff-appellee, sued Decker asserting that an avoidable preferential transfer occurred. Ruling on cross motions for summary judgment, the bankruptcy court concluded that Decker's asserted attorney's charging lien against the arbitration award proceeds was not valid under Ohio law, and that the payment therefore constituted a preferential transfer under § 547(b) of the Bankruptcy Code.[1] For the reasons that follow, the Panel reverses the judgment of the bankruptcy court and remands the adversary proceeding for entry of judgment in favor of Decker.

## I. ISSUES

The general issue raised by this appeal is whether the payment of attorney's fees to Decker constitutes an avoidable preference under § 547(b). In resolving this issue, it must be determined whether Decker held a valid attorney's charging lien against the arbitration award from which the fees were paid and, if so, whether such lien was enforceable under Ohio law.[2]

If the Trustee is found to have proved all requisite elements to avoid the transfer under § 547(b), an additional issue regarding the applicability of the "ordinary course of business" defense, § 547(c)(2), arises. Because Ohio law mandates the conclusion that

_____

[1] The Bankruptcy Code is contained in 11 U.S.C. §§ 101-1330. Unless stated to the contrary, all future statutory references are to the Bankruptcy Code, e.g., "§ ____."

[2] The Trustee's complaint was filed under § 547(b) and does not attempt to invoke his "strong-arm power" to avoid the attorney's lien under § 544. Therefore, the priority of the asserted attorney's lien vis-à-vis the claims of other creditors is not an issue in this appeal.

Decker held a valid, enforceable attorney's lien, the Panel need not consider the "ordinary course" issue.

## II.    JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to decide this appeal.  The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and a "final order" of the bankruptcy court may be appealed as of right under 28 U.S.C. § 158(a)(1).  The judgment of the bankruptcy court holding that the payment by Simms Construction to Decker constituted an avoidable preferential transfer under § 547(b) is a final order.  *Marlow v. Rollins Cotton Co. (In re Julien Co.)*, 146 F.3d 420, 422 (6th Cir. 1998); *R.D.F. Devs., Inc. v. Sysco Corp. (In re R.D.F. Devs., Inc.)*, 239 B.R. 336, 338 (B.A.P. 6th Cir. 1999).

The bankruptcy court's conclusions of law, including those relating to the validity of an alleged attorney's lien under state law, are subject to de novo review.  *See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S. Ct. 1217, 1221 (1991); *Elec. Metal Prods., Inc. v. Bittman (In re Elec. Metal Prods., Inc.)*, 916 F.2d 1502, 1504 (10th Cir. 1990).  "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

## III.    FACTS

The facts are uncontested by the parties.  Simms Construction filed its petition for relief under chapter 7 of the Bankruptcy Code on March 7, 1997.  Harold A. Corzin ("Trustee") was appointed as the chapter 7 trustee.

On or about March 16, 1995, Simms Construction retained Decker to prosecute a construction claim it held against Carter Steel and Fabricating Co., Inc. ("Carter Steel").  The claim arose during construction of the Student Recreation Center of the Ohio University in Athens, Ohio.  The terms of Decker's retention agreement provided that Decker would be paid on an hourly basis and that all invoices from Decker to Simms Construction would become due and payable upon receipt.  These terms were set forth in a letter from Decker to Simms Construction dated March 14, 1995.

On September 11, 1996, attorney Mark Decker ("Attorney Decker") met with Jerry L. Simms, III, ("Simms"), the president and sole shareholder of Simms Construction, to

discuss the progress of the pending arbitration proceedings against Carter Steel. According to an affidavit submitted by Simms in support of Decker's motion for summary judgment, at this meeting it was agreed that

> [A]ttorney Decker would prepare for and complete the arbitration knowing that Simms Construction Services, Inc., would be unable to pay for the firm's services as previously agreed, on the condition that the law firm would have first claim to and be paid from any proceeds or award that resulted from the arbitration . . . . The discussion was concluded with a handshake . . . .

A separate affidavit submitted to the bankruptcy court by Attorney Decker is consistent with Simms' recollection of their conversation.

On September 19, 1996, Simms was present during a telephone conference between Attorney Decker and Jack Stewart ("Stewart"), the attorney for Carter Steel. Attorney Decker's affidavit states that, during that phone conference, he informed Stewart that "substantial time and resources had been invested into the preparation for the arbitration hearing and that the firm [Decker] would be paid out of the proceeds from the arbitration award." As Attorney Decker put it, his law firm was now "working for its money." According to his affidavit, Simms also recalls this portion of Attorney Decker's conversation with Stewart.

On November 22, 1996, an arbitration award in the amount of $120,100 was entered against Carter Steel in favor of Simms Construction. The award was conditioned upon Simms Construction securing the removal and release of certain mechanic's liens aggregating $133,496. The full amount of the arbitration award was held in a trust account with Luper Sheriff and Neidanthal ("Luper Sheriff"), the attorneys for Carter Steel, pending Simms Construction resolving all of the mechanic's lien issues.

Upon receiving notification of the arbitration award, Attorney Decker contacted Stewart and again asserted Decker's charging lien against the arbitration award proceeds. This conversation occurred in "late November, 1996."

Following the arbitration award, Decker continued to negotiate with the mechanic's lien claimants and ultimately obtained releases of the mechanic's liens to Carter Steel's satisfaction. On January 23, 1997, Luper Sheriff issued checks from the arbitration award proceeds to three mechanic's lien claimants, in amounts agreed upon by Attorney Decker and the claimants' attorneys. That same day, Luper Sheriff disbursed $45,632.68 to Decker for attorney's fees invoiced from September 1996 forward. The portion of the

arbitration award that remained after payment of the attorney's (and other expert witness) fees, $21,040.28, was paid to Simms Construction.

As noted previously, Simms Construction filed for chapter 7 relief on March 7, 1997. On April 28, 1999, the Trustee filed an adversary proceeding against Decker seeking to recover the $45,632.68 payment it received from the arbitration proceeds as a preferential transfer. Decker filed an answer on May 19, 1999, alleging that it held an equitable attorney's lien against the arbitration proceeds and that payment in satisfaction of its lien was not a preferential transfer under § 547(b).

On November 9, 2000, in a ruling on cross motions for summary judgment relating solely to the existence of Decker's asserted lien, the bankruptcy court concluded that Decker held no valid attorney's charging lien under applicable Ohio law. The bankruptcy court found that the affidavits submitted by Simms and Attorney Decker established the existence of an oral agreement allowing Decker's fees to be paid out of the arbitration award proceeds. The bankruptcy court held, however, that an oral agreement is "not sufficient under Ohio law to create a valid attorney lien." In reaching this conclusion, the bankruptcy court relied upon an unpublished Ohio Court of Appeals decision, *Rust v. Harris-Gordon*, No. L-97-1415, 1998 WL 526774 (Ohio Ct. App. Aug. 21, 1998), which stated that "a mere assertion of [an] agreement [granting an attorney a charging lien], absent submission of a writing, is insufficient as a matter of law to give rise to the lien." *Id*. at *1.

Decker filed a motion for reconsideration of the bankruptcy court's decision and the motion was denied by order of the bankruptcy court on December 28, 2000. This Bankruptcy Appellate Panel also denied Decker's Motion for Leave to Appeal by entry of an order on April 6, 2001.

The remaining issues pertaining to the alleged preferential transfer and Decker's "ordinary course of business" defense, § 547(c)(2), were tried before the bankruptcy court on April 4, 2003. On September 2, 2003, the bankruptcy court issued an opinion finding that the payment to Decker was not "ordinary in relation to other business dealings between" Decker and Simms Construction under § 547(c)(2)(B). As Decker had not proven a valid affirmative defense to the Trustee's right to recover, the bankruptcy court held that the Trustee could avoid the payment to Decker as a preferential transfer. This timely appeal followed.

## IV.    DISCUSSION

Section 547(b) allows the trustee to recover certain payments made by a debtor to creditors during the ninety days preceding the debtor's bankruptcy filing. Specifically, § 547(b) allows the trustee to:

> avoid any transfer of an interest of the debtor in property –
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if –
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

To avoid a particular transfer, the trustee must prove each of the statutory elements by a preponderance of the evidence.  11 U.S.C. § 547(g); *ABB Vecto Gray, Inc. v. First Nat'l Bank (In re Robinson Bros. Drilling, Inc.),* 9 F.3d 871, 874 (10th Cir. 1993).

In the present adversary proceeding, the Trustee's ability to satisfy the statutory elements, particularly subsection (b)(5), turns on whether Decker held a valid, enforceable attorney's charging lien against the arbitration award proceeds.  If Decker's alleged charging lien is valid and enforceable under Ohio law, the payment to Decker in satisfaction of its lien did not cause Decker to receive more than it otherwise would have been entitled to receive as a result of the liquidation of Simms Construction's bankruptcy estate.

### A. <u>Creation of an Attorney's Charging Lien</u>.

Generally, an attorney's charging lien "allow[s] a lawyer who has represented a successful claimant to retain out of the proceeds of the suit an amount sufficient to pay the

lawyer's claimed fee and disbursements."[3]  Restatement (Third) of the Law Governing Lawyers § 43 cmt. d (2000).  The attorney's charging lien plays an important role in attorney/client relationships:

> Especially when the client has no other assets and the lawyer is receiving a contingent fee, the charging lien gives the lawyer important assurance that the fee and disbursements will actually be paid.  It thus makes it easier for people to secure competent representation when they have small means and meritorious claims.

*Id.*

The preliminary question of whether Decker held a valid attorney's lien against the arbitration award proceeds is governed by Ohio law.  *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979) ("Property interests are created and defined by state law."); *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1450 (6th Cir. 1994)("[P]roperty rights in bankruptcy are determined only by reference to the state law of the jurisdiction."); *Elec. Metal Prods., Inc. v. Bittman (In re Elec. Metal Prods., Inc.)*, 916 F.2d 1502, 1504 (10th Cir. 1990) ("The validity and extent of an attorney's lien in bankruptcy is determined by state law.").  In analyzing Ohio law, this federal court must apply the "law of the state's highest court."  *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995).  If, however, "the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from 'all relevant data.'" *Vogel v. Kalita (In re Kalita)*, 202 B.R. 889, 901 (Bankr. W.D. Mich. 1996) (quoting *Garden City,* 55 F.3d at 1130 (6th Cir. 1995) (citations omitted)).  The "relevant data" to be considered includes state appellate court decisions, "state's supreme court *dicta*, restatements of law, law review commentaries, and the majority rule among other states." *Garden City*, 55 F.3d at 1130; *Strong v. Page (Matter of Page)*, 239 B.R. 755, 763 (Bankr. W.D. Mich. 1999).  A review of these sources is similarly helpful when the state's highest court has addressed a particular topic, but has not directly resolved all potentially attendant issues.

---

[3] An attorney's charging lien differs from a retaining lien in that the latter entitles the lawyer "to retain the client's property in the lawyer's possession in order to secure payment of the lawyer's fees and disbursements."  Restatement (Third) of the Law Governing Lawyers § 43 (2000).

The Ohio Supreme Court has recognized and discussed attorneys' charging liens on three notable occasions. As early as 1880, the Supreme Court acknowledged that an attorney might sustain a lien upon a fund being held by a state court receiver "by reason of the services rendered in securing it, [such] that a court of equity . . . would be fully warranted in directing a reasonable compensation to be paid out of it." *Olds v. Tucker*, 35 Ohio St. 581, 583 (1880).

This premise was further developed in *Diehl v. Friester*, 37 Ohio St. 473 (1882). The trial court in *Diehl* had permitted judgments held by the parties against each other to be offset, except to the extent that the attorneys for one of the parties claimed a charging lien on the judgment proceeds. That portion of the judgment was allowed to the attorneys as legal fees by order of the trial court. In affirming the trial court's ruling, the Ohio Supreme Court first noted that "it has . . . been held in many cases, that a judgment will not be set off against another judgment, to the prejudice of an attorney who contributed by his skill and services in obtaining it." *Id.* at 477. The court then explained that

> an attorney may have a claim upon the fruits of a judgment or decree which he has assisted in obtaining, or upon a sum of money which he has collected, and under some circumstances courts will aid him in securing or maintaining such claim. Thus he will be protected in retaining his fee out of money which he has collected for his client.

*Id.*

The Ohio Supreme Court again addressed the issue of attorney's liens in *Cohen v. Goldberger*, 141 N.E. 656 (Ohio 1923). In that case, Cohen had previously obtained a judgment against the United States Steel Company. The attorneys who represented Cohen in the prior action claimed that Cohen had agreed to pay them a contingency fee of one half of the amount recovered. In an answer filed with the trial court, Cohen apparently admitted that this had indeed been the agreement. When a creditor of Cohen's business partnership asserted a claim to the judgment proceeds superior to that of Cohen's attorneys, the lower court found in favor of the attorneys. The Supreme Court affirmed. In so doing, the court explained that recognizing the creditor's claim as superior to that of the attorneys'

> would put aside entirely the question of [the attorneys'] interest in, or lien upon, the fund produced by their skill and labor, and would result in taking from them that which had thus been procured . . . probably leaving without remuneration of any sort the attorneys but for whose efforts, presumably, the

fund would not have been procured or made available for the payment of the creditors either of the firm or the individuals composing it. The mere statement of that proposition discloses its inequity.

*Id.* at 657-58.

These cases implicitly suggest that some degree of proof of an agreement between the attorney and client is required to establish the existence of a valid attorney's lien under Ohio law. The Supreme Court has not, however, clearly articulated the *level of proof* required to establish the existence of a valid attorney's lien. As recognized by the Restatement of the Law Governing Lawyers, lien statutes and case law from various jurisdictions differ on this issue. Many jurisdictions require the client and lawyer to "contract in writing for the lien." Restatement (Third) of the Law Governing Lawyers § 43 at cmt. e. This "requirement ensures that the client has notice that the lawyer may detain part of any recovery and an opportunity to bargain for a different result." *Id*. However, this "safeguard" is not "required in all jurisdictions, many of which . . . recognize a charging lien without a contract." *Id*. at cmt. d. *See generally* Restatement (Second) of Agency § 464 (1958) ("Unless he undertakes duties inconsistent with such a right or otherwise agrees that it is not to exist . . . an attorney of record who has obtained a judgment has an interest therein, as security for his fees in the case and for proper payments made and liabilities incurred during the course of the proceedings.").

As noted, the existence of an agreement creating a valid attorney's lien was not directly addressed in *Diehl* or *Cohen*. To the contrary, in *Diehl*, the Supreme Court declined to speculate about the evidence that was provided to the trial court prior to the entry of its order enforcing the attorney's lien. *Diehl*, 37 Ohio St. at 478. Likewise, in *Cohen*, it appears that Cohen, the client, admitted to the contingency fee agreement with his attorneys in pleadings before the trial court. Notwithstanding this fact, the *Cohen* court, in dicta, makes the Ohio Supreme Court's most direct statement on the issue: "We find no basis for the contention of counsel that a lien cannot be asserted by attorneys, in the absence of an agreement with their client that they should have such lien." *Cohen*, 141 N.E. at 658.

The Ohio Court of Appeals has also addressed the issue of attorney's charging liens. In analyzing the proof required to establish the existence of such liens, the lower appellate court decisions have generally imposed a more stringent standard than that

suggested by the Ohio Supreme Court language. *See, e.g., Mancino v. City of Lakewood*, 523 N.E.2d 332, 337 (Ohio Ct. App. 1987) ("where the parties have contracted that the attorney shall receive a specified amount of the recovery, such agreement will operate as an equitable lien in favor of the attorney"). *But see Fire Prot. Res., Inc. v. Johnson Fire Prot. Co.*, 594 N.E.2d 146, 148 (Ohio Ct. App. 1991) (holding that an attorney's right to an equitable charging lien "exists regardless of whether the fee is contingent or otherwise and notwithstanding the fact that no express agreement existed as to the payment of fees") (internal quotations omitted).

For instance, in *Minor Child of Zentack v. Strong*, 614 N.E.2d 1106 (Ohio Ct. App. 1992), a law firm that had recovered a worker's compensation award for its client moved to intervene when the trial court ordered the client to pay his child support arrearages from the award proceeds. The law firm's motion to intervene was supported by an affidavit from the attorney stating that the client had agreed to pay the law firm "a contingent fee on the amount it recovered on his behalf." *Id.* at 1108. The Court of Appeals noted that the law firm "neither attached a copy of the contract nor an affidavit from [the client] confirming the existence of such agreement." *Id.* The court then held "that a naked affidavit by an attorney, without a copy of the agreement of the parties *or an affidavit of the attorney's client admitting to a contingent fee agreement*, is insufficient as a matter of law to operate as proof of an equitable lien in favor of the attorney." *Id.* (emphasis added). *Zentack* thus discussed how the existence of an attorney's lien may be proved; it does not, however, mandate additional requirements regarding the creation and validity of the lien.

Similarly, in *Rust v. Harris-Gordon*, No. L-97-1415, 1998 WL 526774 (Ohio Ct. App. Aug. 21, 1998), an attorney, Rust, asserted an attorney's charging lien against the proceeds of a settlement received by his former client as a result of negotiations conducted by her new attorney. In support of his claim, Rust alleged that he and the client had "entered into a one-third contingency agreement for the payment of his legal fees." *Id.*, 1998 WL 526774, at *1. No proof of the agreement was included in the record, however. Citing *Zentack*, the court held that "a mere assertion of the agreement, absent submission of a writing, is insufficient as a matter of law to give rise to the lien." *Id*. Thus, the court concluded that Rust had failed to establish a valid attorney's lien on the settlement proceeds. *Id.*

In denying Decker's claim to an attorney's charging lien on the arbitration award proceeds, the bankruptcy court cited the *Rust* decision for the proposition that the agreement creating the lien must be in writing. A comprehensive review of case law on the issue reveals, however, that the relevant language in *Rust* is, at best, an inexact statement of the applicable Ohio law. The Ohio Supreme Court, in dicta, has suggested that an agreement with the client is not a prerequisite to the creation of an attorney's charging lien. More recently, the Ohio Court of Appeals has required proof of the attorney's entitlement to a charging lien but has stated, in *Zentack*, that an affidavit from the client is sufficient. Under either of these standards of proof, the Simms affidavit adequately establishes Decker's attorney's lien on the arbitration award proceeds. Because the bankruptcy court relied on a more stringent standard for establishing a valid attorney's lien than is required under Ohio law, the bankruptcy court's decision must be reversed.

## B. Enforcement of Attorney's Charging Lien.

Ohio law provides that an attorney may enforce a charging lien either by taking possession of the funds to which the lien has attached or by giving notice of the asserted lien to the judgment debtor. As stated by the Ohio Supreme Court in *Diehl*:

> Although an attorney may contribute his skill and services in obtaining a judgment for his client, he has, in this state, no lien on such judgment for his fees, *where there is no agreement for such lien known to the judgment debtor* . . . . But, on the other hand, an attorney may have a claim upon the fruits of a judgment or decree which he has assisted in obtaining, *or upon a sum of money which he has collected*, and under some circumstances courts will aid him in securing or maintaining such claim.

*Diehl*, 37 Ohio St. at 477 (emphasis added). *See also Bailey v. Toledo & O. Cent. Ry.*, 3 Ohio N.P (n.s.) 366, 1905 WL 1272 (Ohio Ct. Com. Pl. Apr. 17, 1905) (attorney to whom an interest in the proceeds of a judgment has been assigned may only enforce his interest against the judgment debtor if he has notified the judgment debtor of his interest); *cf. Penn. Co. v. Thatcher*, 85 N.E. 55 (Ohio 1908) (notice given to third party of attorney's interest in settlement proceeds was insufficient to establish attorney's claim against settlement proceeds). In allowing for enforcement by notice to the judgment debtor, Ohio law parallels the requirement articulated in the Restatement of the Law Governing Lawyers, i.e., that "the lien becomes binding on a third party when the party has notice of the lien."

Restatement (Third) of the Law Governing Lawyers § 43 (2000); *see also* Restatement (Second) of Agency § 464 cmt. n (1958) ("Unless the judgment is for costs only, the right [of the attorney to be paid from the proceeds of the judgment] exists only if the attorney gives notification of his intent to enforce it . . . to the judgment debtor . . . .").

The affidavits of Simms and Attorney Decker establish without contradiction that Attorney Decker first informed counsel for Carter Steel of Decker's intent to assert a charging lien against the arbitration award proceeds during a telephone conversation on September 19, 1996. After the arbitration award was entered on November 22, 1996, Attorney Decker again informed counsel for Carter Steel of his attorney's lien against the award proceeds. Accordingly, Decker notified Carter Steel, and its attorneys, Luper Sheriff, of its lien by the end of November, 1996, at the latest.

The Trustee argues that Decker's charging lien is not enforceable in bankruptcy cases because it is a state law equitable remedy, similar to the constructive trust addressed by the Sixth Circuit Court of Appeals in *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir. 1994). The Trustee's argument is unavailing.

*Omegas* should not be read to invariably preclude the enforcement of constructive trusts or, for that matter, equitable liens or other types of equitable relief. *See Poss v. Morris (In re Morris)*, 260 F.3d 654 (6th Cir. 2001) (bankruptcy court may recognize a constructive trust when applicable state law imposes the constructive trust prior to the filing of the debtor's bankruptcy petition); *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 937 (6th Cir. 2000) (bankruptcy court may lift the automatic stay so that prepetition state court action, seeking to establish equitable title in certain property, may be pursued; *Omegas* "does not bar the enforcement of such a judgment by the bankruptcy court"); *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996) (bankruptcy court may recognize a constructive trust when bankruptcy policy of ratable distribution among creditors is not implicated). Moreover, the Bankruptcy Code broadly defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Once the existence of an attorney's charging lien is established, it is treated as a lien for all purposes under the Bankruptcy Code. It does not matter whether the lien is characterized as "legal" or "equitable."

**C. Payment in Satisfaction of a Valid Attorney's Lien Is Not a Preferential Transfer.**

The existence of a valid, enforceable attorney's lien in Decker's favor mandates the conclusion that the $45,632.68 payment to Decker was not a preferential transfer. Although the payment was made during the 90-day period preceding Simms Construction's bankruptcy filing, it was made in satisfaction of Decker's charging lien against the arbitration award proceeds. It is well established that "[p]ayments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a chapter 7 liquidation." *Ray v. City Bank & Trust Co. (In re C-L Cartage Co., Inc.)*, 899 F.2d 1490, 1493 (6th Cir. 1990). Consequently, the payment did not allow Decker to receive more than it would have been entitled to receive had the transfer not been made, § 547(b)(5), and the Trustee has failed to prove an avoidable transfer under § 547(b).

**D. Ordinary Course of Business Defense.**

As discussed above, the existence of Decker's valid, enforceable attorney's charging lien, precludes the Trustee from establishing that a preferential transfer occurred under § 547(b). Because the Trustee has failed to prove that the transfer is an avoidable preference, we need not consider the affirmative defense of whether the payment to Decker was made in the ordinary course of business under § 547(c)(2).

## V. CONCLUSION

The bankruptcy court misapplied Ohio law in holding that Decker had failed to establish that it held a valid, enforceable attorney's charging lien against the arbitration award proceeds. As a result of Decker's charging lien, the $45,632.68 payment it received from the award proceeds during the preference period did not cause it to receive more than it would have otherwise been entitled to receive in the liquidation of the Simms Construction estate. Accordingly, the bankruptcy court's decision is reversed and remanded for entry of a judgment in favor of Defendant on its cross-motion for summary judgment.