ELECTRONIC CITATION: 2009 FED App. 0001P (6th Cir.)
File Name: 09b0001p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: OMEGA DOOR COMPANY, INC.,<br><br>Debtor.<br>_____<br><br>KATHRYN A. BELFANCE,<br>Trustee of the Omega Door Company<br>Reorganization Trust,<br><br>Plaintiff-Appellant/<br>Cross-Appellee,<br><br>v.<br><br>RICHARD BUONPANE and<br>GEORGEANNE BUONPANE,<br><br>Defendants-Appellees/<br>Cross-Appellants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Nos. 07-8047 and 07-8048

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Youngstown.
No. 03-42905

Argued: August 12, 2008

Decided and Filed: January 13, 2009

Before: GREGG, PARSONS, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED**: Jessica E. Price, BROUSE McDOWELL, Akron, Ohio, for Appellant. Kenneth L. Gibson, GIBSON & LOWRY, Cuyahoga Falls, Ohio, for Appellees. **ON BRIEF**: Jessica E. Price, Marc B. Merklin, Kate M. Bradley, BROUSE McDOWELL, Akron, Ohio, for Appellant. Michael J. Moran, GIBSON & LOWRY, Cuyahoga Falls, Ohio, for Appellees.

---

**OPINION**

---

STEVEN RHODES, Bankruptcy Appellate Panel Judge. John and Tina Thompson ("the Thompsons") purchased the stock of the debtor, Omega Door Company, Inc. ("Omega"), from Richard Buonpane ("Buonpane") and gave him an installment note for part of the purchase price. However, Omega, not the Thompsons, made all of the payments on that note. Kathryn A. Belfance, the trustee of the Omega Door Reorganization Trust, filed this adversary proceeding against Richard and Georgeanne Buonpane (collectively "the Buonpanes") asserting four claims. In the first two claims, the trustee seeks to recover the note payments that Omega made to the Buonpanes during the one and four years preceding Omega's bankruptcy filing as fraudulent transfers under applicable federal and state law. The trustee's third claim is that Omega's payments were an illegal stock redemption under applicable state law. Finally, the trustee claims that Omega's payments during the 90 days preceding the filing of the petition for relief were preferential transfers.

In the bankruptcy court, the parties filed cross-motions for partial summary judgment on the fraudulent transfer and illegal stock redemption claims. Because the note was given more than four years before Omega filed its bankruptcy case, the bankruptcy court held that the trustee's fraudulent transfer claims were barred by the applicable statutes of limitations and dismissed those claims. The bankruptcy court also held that the transaction was not an illegal stock redemption and dismissed that claim. The trustee appeals those rulings.

After a trial on the preference claim, the bankruptcy court found that Richard Buonpane had a valid security interest in Omega's assets, but that the security interest was voidable because it was not perfected. Therefore, the bankruptcy court held that the trustee could recover $20,142.50 in payments that Omega made to the Buonpanes during the 90 day preference period. The trustee's appeal contends that Buonpane did not have a valid security interest. The Buonpanes' appeal contends that the security interest was valid and that therefore the payments were not preferential.

For the reasons stated below, the dismissal of the trustee's two fraudulent transfer claims is vacated. The dismissal of the illegal stock redemption claim is affirmed. The judgment on the trustee's preference claim is also affirmed.

# I.   ISSUES ON APPEAL

There are three issues on appeal.  The first is whether the applicable statutes of limitations barred the trustee's state and federal fraudulent transfer claims.  That issue turns on whether Omega's payments to the Buonpanes were separate transfers.

The second issue is whether Buonpane's stock purchase was an illegal stock redemption or dividend by Omega.

The third is whether Omega's payments to the Buonpanes in the 90 days prior to bankruptcy were preferential transfers.  This issue turns upon whether Buonpane had a valid, perfected security interest in Omega's assets.  The Panel notes that initially, the Buonpanes had also asserted that the payments were not "on account of an antecedent debt."  However, they abandoned that argument during the oral argument.

# II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel and a final order of the bankruptcy court may be appealed as of right.  28 U.S.C. § 158(a)(1).  For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).  An order granting summary judgment is a final order. *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).

The bankruptcy court's final order granting the Buonpanes' motion for summary judgment is reviewed de novo. *Gold v. FedEx Freight East, Inc. (In re Rodriguez)*, 487 F.3d 1001, 1007 (6th Cir. 2007).  "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *In re Morgeson*, 371 B.R. at 800.

The judgment of the bankruptcy court holding that the note payments made in the 90 days preceding the filing of the petition constituted avoidable preferential transfers under 11 U.S.C. § 547(b) is a final order. *Corzin v. Decker, Vonau, Sybert & Lackey, Co. (In re Simms Constr. Servs.*

*Co., Inc.)*, 311 B.R. 479, 481 (B.A.P. 6th Cir. 2004) (citing *Marlow v. Rollins Cotton Co. (In re Julien Co.)*, 146 F.3d 420, 422 (6th Cir. 1998)).

The bankruptcy court's conclusions of law, including those relating to the validity and perfection of the security interest, are reviewed de novo. *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007); *see also In re Simms Constr. Servs. Co, Inc.*, 311 B.R. at 481.

The court's findings of fact are reviewed under the clearly erroneous standard. *In re DSC, Ltd.*, 486 F.3d at 944. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

## III.   FACTS

Prior to January 1, 1999, Richard Buonpane was the sole shareholder of Omega Door Company, Inc. and its affiliates. On January 1, 1999, pursuant to a purchase agreement dated December 14, 1998, Buonpane sold his stock in Omega and two of its affiliate companies to the Thompsons for $1,550,000. Buonpane received the first $550,000 of the purchase price in cash. The Thompsons executed and delivered to Buonpane a Commercial Secured Promissory Note dated January 1, 1999, in the principal amount of $1 million for the remainder of the purchase price. On the same day, Omega executed and delivered a guaranty of the Thompsons' obligations to Buonpane. At the time of the sale, Buonpane executed a non-compete agreement that the parties valued at $50,000.

In pertinent part, the purchase agreement between the Thompsons and Buonpane provides:

> [Buonpane] shall have a security interest in all of the assets of [Omega and its affiliates] and all of the stock certificates being sold and conveyed herein as further security for the performance of all obligations contained herein and for any amounts owed to [Buonpane] under the terms of any leases associated with this transaction. [The Thompsons] shall execute and deliver to [Buonpane] a duly executed UCC financing statement for the security interest held in all inventory, supplies, accounts receivable, office furnishings, equipment and personal property to perfect this security interest . . . .

(J.A. at Tab 12, Exh. I, p. 5.) The note also states that it is secured by a security agreement. (J.A. at Tab 12, Exh. II, p.2.)

Additionally, Omega and Buonpane signed a Uniform Commercial Code Financing Statement - UCC 1, which covers all inventory, supplies, accounts receivable, office furniture, equipment, personal property and proceeds from the sale of any of the foregoing. The financing statement was filed in the State of Ohio, Mahoning County Records' Office. (J.A. at Tab 12, Exh. V.) The financing statement was not, however, filed with the Ohio Secretary of State.

As a result of Buonpane's sale of the stock to the Thompsons, they owned all of the stock of Omega and its affiliates. However, the Thompsons made none of the subsequent payments on the note. Instead, Omega made all of the payments on the note. Omega issued the checks in payment on the note to either Buonpane or his wife.[1]

Omega filed a petition for relief under chapter 11 on June 10, 2003.[2] On February 6, 2004, Buonpane filed a proof of secured claim in the amount of $743,389.90, based upon the guaranty of Omega. On April 10, 2005, Omega filed an objection to this claim and a motion to subordinate the claim. Omega asserted that Buonpane's claim was unsecured because it was unperfected and that Buonpane's claim should be subordinated to the claims of unsecured creditors pursuant to 11 U.S.C. § 510(a). On August 16, 2005, Omega filed its First Amended and Restated Plan of Reorganization. The objection to Buonpane's claim was resolved through a settlement agreement that treated Buonpane's claim in a separate class as a disputed secured claim that was to receive the same distribution as unsecured creditors under the plan.

---

[1] Omega made some of the payments on the note to Buonpane's wife even though she was not a party to the 1999 transaction. Upon remand, the bankruptcy court may consider whether this impacts the trustee's claims and any appropriate relief.

[2] Because Omega's bankruptcy case was filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, October 17, 2005, all references to the Bankruptcy Code are to the pre-BAPCPA version. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of the Act).

On December 7, 2005, the trustee filed this adversary proceeding asserting four claims for relief. First, the trustee claims that the note payments that Omega made in the four years preceding the petition date were fraudulent transfers recoverable under 11 U.S.C. § 544(b) and Ohio Revised Code § 1336.04. Second, the trustee claims that the note payments in the one year preceding the petition date were fraudulent transfers under 11 U.S.C. § 548. Third, the trustee claims that the payments were illegal corporate dividends in violation of Ohio Revised Code §§ 1701.33 and 1701.35 because Omega made the payments. Fourth, the trustee claims that the payments made within the 90 days prior to the petition date are preferences.

The Buonpanes and the trustee filed cross-motions for partial summary judgment on November 13, 2006. In their motion, the Buonpanes asserted that the trustee's fraudulent transfer claims were barred by the applicable state and federal statutes of limitations because the period of limitations began to run on the date of the stock sale, January 1, 1999, rather than on the date that each installment payment was made. In the alternative, they argued that Omega received reasonably equivalent value for the payments through the reduction in its guarantor liability.

The trustee argued that each installment payment was a separate fraudulent transfer and that at the time of each payment: (a) the period of limitations would then begin; (b) Omega had to receive reasonably equivalent value; and (c) Omega's solvency should be determined. The trustee contended that Omega was insolvent at the time of each payment and did not receive reasonably equivalent value in exchange for the payments. Rather, in exchange for total payments of $493,712.61 in the four years preceding the petition date, Omega received only a non-compete agreement valued at $50,000, as well as new management and new debt.

Regarding the illegal stock redemption claim, the trustee argued that the court should look beyond the form of the stock transaction and view the stock purchase for "what it really was– a purchase by the debtor of its own stock" and find that it was an illegal stock redemption. (J.A. at Tab 4, p. 19.)

On February 1, 2007, the bankruptcy court issued a memorandum opinion and order granting the Buonpanes' motion for partial summary judgment and denying the trustee's motion. In its memorandum opinion, the court noted that neither the parties nor the court had found case law addressing how installment payments should be treated under state or federal fraudulent transfer law.

However, the court concluded that the "installment payments represent an obligation 'incurred' by the Thompsons and debtor on the Purchase Date, and, therefore, the respective statutes of limitations bar the state and federal fraudulent transfer actions."  (J.A. at Tab 10, p.12.)

The bankruptcy court rejected the trustee's contention that because all of the payments on the note were made by Omega, the stock purchase was actually an illegal stock redemption.  The trustee argued that the stock sale was made with the understanding that Omega would ultimately make all the payments.  The bankruptcy court rejected the trustee's arguments because (1) the Thompsons acquired ownership and control of Omega, (2) Omega did not purchase or redeem its stock, and (3) the payments that Omega made were for the benefit of the Thompsons.

The bankruptcy court conducted a trial on the fourth count of the trustee's complaint which asserted that payments totaling $20,142.50 made to the Buonpanes by Omega in the 90 days preceding the petition date were voidable preferential payments under 11 U.S.C. § 547(b).  On this claim, the parties stipulated that Omega was insolvent during those 90 days, that the claims of creditors will not be paid in full, that payments totaling $20,142.50 were made during those 90 days, that the payments were to and for the benefit of Buonpane, and that those payments were for an antecedent debt.

Following the trial, the bankruptcy court issued a detailed memorandum opinion concluding that Buonpane held a valid security interest in the assets of Omega, but because the security interest was not perfected and was therefore voidable, Buonpane gave no new value for the payments he received on the note under § 547(c)(1).  Therefore, the court held that Buonpane received voidable preferential payments totaling $20,142.50.

The trustee timely appealed the bankruptcy court's February 1, 2007 order granting the Buonpanes' motion for partial summary judgment and the July 30, 2007 order to the extent that it found that Buonpane held a valid security interest.  Buonpane timely appealed the July 30, 2007 order to the extent that it found he received voidable preferential payments totaling $20,142.50.

## IV.   DISCUSSION

**A.  Whether each installment payment on the note is a separate transfer under the fraudulent transfer statutes.**

The trustee's complaint asserts a claim for constructive fraud under Ohio Revised Code § 1336.04, pursuant to her powers under 11 U.S.C. § 544(b)(1), which permits the trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502."   In pertinent part, Ohio Revised Code Ann. §1336.04 provides:

> **1336.04 Intent to defraud; property depletion; debts incurred beyond ability to pay**
>
> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
>
> . . . .
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
>
> (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
>
> (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

The statute of limitations for a claim brought under Ohio Revised Code § 1336.04 is four years after the transfer was made or the obligation was incurred.  Ohio Rev. Code § 1336.09(B).

The trustee also asserted a claim under 11 U.S.C. § 548(a) to avoid Omega's payments made during the one year before the bankruptcy was filed.  Section 548 provides in pertinent part:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> . . . .

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured[.]

For the payments that Omega made in the one year period before bankruptcy, these claims appear to be redundant. In any event, the trustee asserts that each installment payment that Omega made to the Buonpanes constituted a separate transfer. On the other hand, the Buonpanes contend that Omega made only one transfer– its guaranty of the note as part of the sale of stock to the Thompsons on January 1, 1999.

The bankruptcy court found in favor of the Buonpanes on this issue. Specifically, the bankruptcy court held:

> Neither party cited, nor did this Court independently find, any case law addressing the treatment of installment payments under a promissory note under state or federal fraudulent transfer law. However, . . . the Court finds that the installment payments represent an obligation "incurred" by the Thompsons and Debtor on the Purchase Date, and, therefore, the respective statutes of limitations bar the state and federal fraudulent transfer actions.
>
> R.C. § 1336.06(B)(2) states that an obligation is incurred, if evidenced by a writing, when the writing executed by the obligor is delivered to or for the benefit of the obligee. Ohio Rev. Code Ann. § 1336.06 (West 2006). Likewise, federal courts interpreting 11 U.S.C. § 547(c)(2) have concluded that an obligation is incurred when the debtor becomes legally obligated to pay. *Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.)*, 695 F.2d 833, 837 (5th Cir. 1983); *see also Belfance v. BancOhio/National Bank (In re McCormick)*, 5 B.R. 726, 731 (Bankr. N.D. Ohio 1980) (debt not "incurred" anew every month when installment payment becomes due).
>
> More pointedly, the bankruptcy court for the Southern District of New York acknowledged that, "While the Bankruptcy Code is silent on the question of when a debt or obligation is 'incurred,' courts have not questioned that an 'obligation' to pay principal indebtedness under a promissory note is 'incurred' on the date the note

is executed and delivered." *Federal Communications Commission v. NextWave Personal Communication (In re NextWave Personal Communications, Inc.)*, 235 B.R. 277, 289 (Bankr. S.D.N.Y. 1999) (citing *In re Iowa Premium Service.,* 695 F.2d 1109, 1111-12 (8th Cir. 1982); *In re Smith-Douglass, Inc.*, 842 F.2d 729, 730 (4th Cir. 1988); *In re Pippin*, 46 B.R. 281, 283-84 (Bankr. W.D. La. 1984) (holding that, for preference purposes, debtor becomes legally obligated to pay under installment payment contract when contract is executed)).

Based upon the state statute and the rationale articulated in the foregoing case law, this Court finds that Debtor incurred its guarantor liability on the Note on January 1, 1999. As a consequence, both the state and federal statutes of limitations bar Trustee from pursuing the [fraudulent transfer claims.]

(J.A. at Tab 10, pp. 12-14.)[3]

It is a "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S. Ct. 1011, 1015 (1992). The Panel must therefore give "operative effect" to the word "or" in the applicable statutes. The bankruptcy court focused on the *obligation* that Omega incurred in 1999. However, Ohio Revised Code § 1336.04 states that "[a] transfer made *or* an obligation incurred by a debtor is fraudulent . . . ." (Emphasis added.) The Ohio statute is not restricted only to an obligation incurred. Likewise, 11 U.S.C. § 548(a)(1) is not restricted to an obligation incurred; it also allows the trustee to avoid transfers *or* obligations. "Although sections 544 and 548 of the Bankruptcy Code authorize the trustee to avoid a transfer or an obligation, section 102(5) negates any implication that the trustee may not avoid both a transfer that secures or is otherwise related to an obligation and the obligation itself." Gerald K. Smith & Frank R. Kennedy, *Symposium on Bankruptcy: The Trustee's Avoiding Powers: Fraudulent Transfers and Obligations: Issues of Current Interest*, 43 S.C. L. Rev. 709, 717 (1992). The word "or" is not exclusive when used in the Bankruptcy Code. 11 U.S.C. § 102(5).

A "transfer" under Ohio law is defined as "every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an

_____

[3] Subsequent to the bankruptcy court's decision, the court in *Wells v. Sleep (In re Michigan Machine Tool Control Corp.)*, 381 B.R. 657 (Bankr. E.D. Mich. 2008), issued an opinion reaching the same result. However, the Panel does not find that case persuasive for the reasons stated herein.

asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Ohio Rev. Code Ann. § 1336.01(L).

Similarly, the Bankruptcy Code defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption . . . ." 11 U.S.C. § 101(54).

The definitions of "transfer" under the state law and the Bankruptcy Code are very broad. The meaning of "transfer" is not limited to incurring an obligation, as the bankruptcy court's decision suggests. Ohio law broadly defines "transfer" as "*every* direct or indirect . . . method of disposing of or parting with an asset or an interest in an asset, and includes payment of money . . . ." Ohio Rev. Code Ann. § 1336.01(L) (emphasis added). Under that definition, without question, "transfer" includes both incurring an obligation and any payments on any obligation. The Bankruptcy Code also defines "transfer" broadly, even if it does not specifically state that it includes the payment of money. *See* 11 U.S.C. § 101(54).

In *Advanced Telecommunication Network, Inc. v. Allen (In re Advanced Telecommunication Network, Inc.)*, 490 F.3d 1325, 1331-32 (11th Cir. 2007), the Eleventh Circuit reached a similar conclusion, holding that a statute of limitations for fraudulent transfers did not bar the recovery of installment payments even though the underlying obligation that gave rise to the payments would be barred from avoidance. The court noted that the applicable New Jersey statute for avoiding constructively fraudulent transfers allows the avoidance of both a "transfer" and an "obligation."

Because the same is true for Ohio Revised Code § 1336.04 and 11 U.S.C. § 548(a), the Panel concludes that the bankruptcy court erred in its conclusion "that the installments payments represent an obligation 'incurred' by the . . . debtor on the Purchase Date [of the stock], and, therefore, the respective statutes of limitations bar the state and federal fraudulent transfer actions." (J.A. at Tab 10, p. 12.) Similarly, although the court's finding that the "Debtor incurred its guarantor liability on the Note on January 1, 1999," is factually correct, the court's conclusion that "[a]s a consequence, both the state and federal statutes of limitations bar trustee from pursuing the First and Second Claims for Relief" is erroneous. (J.A. at Tab 10, p. 13-14.) Therefore, the February 1, 2007 order awarding the Buonpanes summary judgment on the trustee's fraudulent transfer claims is vacated.

On the other hand, the bankruptcy court did not err in denying the trustee's motion for summary judgment. Because the bankruptcy court concluded that the trustee's claims were barred by the statutes of limitations, the court did not determine the merits of those claims. Moreover, the record establishes that there are genuine issues of material fact concerning (1) whether Omega received reasonably equivalent value in exchange for the transfers; and (2) Omega's insolvency or inability to meet its obligations as they came due. Regarding the latter issue, the parties disagree on whether the guaranty should have been recorded as a direct obligation on Omega's balance sheet, an issue that the court has yet to decide. The Panel also notes that although a motion to strike the affidavit of Karl Schroedel that put some of these facts at issue was before the court, that motion was deemed moot as the court did not consider the affidavit in its ruling on the summary judgment motions. (J.A. at Tab 10, p.5 n.4.) Additionally, the bankruptcy court needs to make a factual finding whether the payments at issue were made on account of the guaranty to determine whether they were on account of an antecedent debt. As a result, the February 1, 2007 order denying the trustee's summary judgment motion is affirmed.

### B. Whether the sale of Omega's stock constituted an illegal stock redemption.

The trustee asserts that the stock purchase constituted a purchase or redemption by Omega of its own stock while insolvent in violation of Ohio Revised Code § 1701.35(B), which provides:

> A corporation shall not purchase its own shares except as provided in this section, nor shall a corporation purchase or redeem its own shares if immediately thereafter its assets would be less than its liabilities plus its stated capital, if any, or if the corporation is insolvent, or if there is reasonable ground to believe that by such purchase or redemption it would be rendered insolvent.

If a corporation redeems its stock in violation of § 1701.35(B), Ohio Revised Code § 1701.95(D) imposes liability upon a shareholder who knowingly receives any dividend, distribution or payment under certain circumstances.

> A shareholder who knowingly receives any dividend, distribution, or payment made contrary to law or the articles shall be liable to the corporation for the amount received by that shareholder that is in excess of the amount that could have been paid or distributed without violation of law or the articles.

Ohio Rev. Code § 1701.95(D).

The bankruptcy court concluded that there was no illegal stock redemption under Ohio law, because the Thompsons acquired ownership and control of Omega as a result of the stock sale in 1999, and that the payments made on the note by Omega, as guarantor, were made for the benefit of the Thompsons. The bankruptcy court further found that even assuming that there was a stock redemption, the trustee did not carry her burden of demonstrating that there is no genuine issue of material fact that the Buonpanes knowingly received dividends, a distribution or payments, as required by Ohio Revised Code § 1701.95(D), because she had not established that the Buonpanes knew the note would be paid by Omega. Therefore, the court granted the Buonpanes' motion for partial summary judgment on the trustee's claim under Ohio Revised Code §§ 1701.35(B) and 1701.95(D).

On appeal, the trustee argues that the bankruptcy court erred in finding that the stock sale was not an illegal stock redemption because the court "focused merely on the form of the transaction, rather than its substance." (Appellant's Br. at 28.) According to the trustee, the transaction was a stock sale in form only, but in substance was a stock redemption by Omega because Omega made all of the payments on the note. As a result, she asserts, the transaction was no different than a purchase or redemption by Omega of its own stock.

The trustee is correct that as a court of equity, the bankruptcy court may look beyond the form of the transaction. *See Yoder v. T.E.L. Leasing, Inc.* (*In re Suburban Motor Freight, Inc.*), 124 B.R. 984, 998 (Bankr. S.D. Ohio 1990). Nevertheless, the record establishes that even though Omega made the payments on the note, Omega did not purchase or redeem its own stock; rather, the Thompsons purchased the stock. As the trustee herself says, "the debtor made all the payments under the Note on *behalf of and for the benefit of* Thompson . . . ." (Appellant's Br. at 28) (emphasis added.)

The trustee next asserts that the bankruptcy court erred in finding that, even if the stock sale constituted a stock redemption, the trustee failed to establish that there was no genuine issue of material fact that Buonpane knowingly received a dividend, distribution or payment. The only evidence on this issue is contained in the deposition of John Thompson. He testified that he did not have independent means to make the payments on the note and that Buonpane was aware of his financial position. However, when asked whether Buonpane knew that Omega would make the

payments, John Thompson testified that he believed it was understood but did not recall specifically discussing it. (J.A. at Tab 19, p. 48.) As the bankruptcy court found, Thompson's testimony establishes only that *Thompson* knew Omega would make all the payments, not that Buonpane knew.

Accordingly, the Panel holds that the bankruptcy court did not err by granting partial summary judgment to Buonpane on this issue. The bankruptcy court's order is affirmed in this regard.

### C. Whether the trustee can recover $20,142.50 as preferential transfers.

Following a trial on the merits, the bankruptcy court held that payments made on the note in the 90 days prior to the petition filing date were recoverable by the trustee as preferential transfers pursuant to § 547(b) and accordingly entered a judgment against Buonpane.[4] During the oral argument, Buonpane conceded that all the elements of § 547(b) are met. The only remaining issue is whether Buonpane is entitled to the "new value" defense. Based on the definition of "new value" under 11 U.S.C. § 547(a)(2), the bankruptcy court held that because the security interest was voidable on the petition date, no new value was given.

Buonpane argues that the payments that Omega made in the 90 days preceding the petition date are not avoidable because they fall under § 547(c)(1). That exception applies to transfers that are intended as and resulted in a contemporaneous exchange for new value. Buonpane asserts that the exchange here was the release of collateral subject to the security interest. The trustee responds that no new value was exchanged because either Buonpane did not have a valid security interest or the failure to perfect the security interest makes it avoidable.

The bankruptcy court applied the "composite documents approach," which considers all of the documents "executed between a debtor and creditor" to determine whether a security interest has been granted. *Bavely v Wandstrat (In re Harbour Lights Marina, Inc.*), 146 B.R. 963, 968 (Bankr. S.D. Ohio 1992), *aff'd*, 153 B.R. 781 (S.D. Ohio 1993). This approach examines all the documents executed between a debtor and a creditor to determine, if taken together, whether the "writing or

---

[4] The Panel questioned the parties regarding whether the same payment could be recoverable as both a fraudulent conveyance and a preference. Given the Panel's remand of the fraudulent conveyance claims, this question is properly first left for the bankruptcy court to decide.

writings, regardless of label, . . . adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, [that] would satisfy both the formal requirements of the statute [requiring a formal security agreement] and the policies behind it." *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973).

Under Ohio law, when the only document executed by a debtor is a standard form UCC-1 financing statement, an enforceable security agreement does not exist. *Silver Creek Supply v. Powell*, 521 N.E.2d 828, 834 (Ohio App. 1987); *see also Yoppolo v. Trombley (In re DeVincent)*, 238 B.R. 722, 727 (Bankr. N.D. Ohio 1999) ("[U]nder Ohio law a financing statement, in and of itself, does not exhibit the requisite intent to create security interest.").

The only documents that *Omega* executed were the financing statement and the guaranty; Omega was not a party to the stock purchase agreement. Nothing in the guaranty establishes the requisite intent to create a security interest. Whatever intent the Thompsons and Buonpane may have had concerning the possible creation of the security agreement, nothing signed by Omega or to which it is a party evidences its intent to grant Buonpane a security interest in its property. Accordingly, the bankruptcy court's finding that Buonpane held a valid security interest in the assets of Omega is without basis in the record. Because Buonpane did not hold a security interest in Omega's assets, Buonpane's corollary argument that his proportional release of his security interest constituted contemporaneous exchange for new value under § 547(c)(1) must be rejected.

Moreover, even if Buonpane had a security interest, its partial release would not constitute new value if, as Buonpane concedes, that security interest was unperfected. "[N]ew value" is "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither *void nor voidable* by the debtor or the trustee under any applicable law . . . ." 11 U.S.C. § 547(a)(2) (emphasis added). "Under Ohio law, a lien creditor has priority over an unperfected secured creditor." *In re Hurst*, 308 B.R. 298, 301 (Bankr. S.D. Ohio 2004). Therefore, even if Buonpane had a security interest, because that security interest was unperfected, it was voidable on the petition date. As a result, under the plain language of § 547(a)(2), Buonpane gave no new value in exchange for the payments that he received. The bankruptcy court correctly determined this result.

*Ford Motor Credit Co. v. Ken Gardner Ford Sales, Inc. (In re Ken Gardner Ford Sales, Inc.)*, 10 B.R. 632 (Bankr. E.D. Tenn. 1981), *aff'd*, 23 B.R. 743 (E.D. Tenn. 1982), cited by the bankruptcy court, reached the same conclusion. That court rejected Ford Motor Company's argument that "new value" was given pursuant to 11 U.S.C. § 547(c) due to the release of collateral subject to an unperfected security agreement. The court found that because the debt was secured by an avoidable security interest, all that was released was an avoidable security interest and no new value was given. *Id.* at 646.

Accordingly, the bankruptcy court's conclusion that $20,142.50 is recoverable by the trustee under 11 U.S.C. § 547(b) is affirmed.

## V. CONCLUSION

The bankruptcy court's order granting summary judgment to the Buonpanes and dismissing the federal and state fraudulent transfer claims is vacated, and these claims are remanded to the bankruptcy court for further proceedings.

The bankruptcy court's order granting summary judgment to the Buonpanes, determining that the transaction was not an illegal stock redemption, is affirmed.

The bankruptcy court's order holding $20,142.50 recoverable by the trustee as preferential transfers is affirmed.