RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: DSC, LTD., a Michigan corporation,

　　　　　　　　　　　　　　　　*Debtor.*

---

RIVERVIEW TRENTON RAILROAD COMPANY; CROWN
ENTERPRISES, INC.,

　　　　　　　　　　　　　*Plaintiffs-Appellants,*

　　　　*v.*

DSC, LTD., a Michigan corporation,

　　　　　　　　　　　　　*Defendant-Appellee.*

No. 06-1813

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-72779—Patrick J. Duggan, District Judge.

Argued: April 19, 2007

Decided and Filed: May 23, 2007

Before: MERRITT and MARTIN, Circuit Judges; FORESTER, Senior District Judge.[*]

---

## COUNSEL

**ARGUED:** K. Scott Hamilton, DICKINSON WRIGHT, Detroit, Michigan, for Appellants.
Geoffrey L. Silverman, SILVERMAN & MORRIS, West Bloomfield, Michigan, for Appellee.
**ON BRIEF:** K. Scott Hamilton, DICKINSON WRIGHT, Detroit, Michigan, for Appellants.
Geoffrey L. Silverman, Karin F. Avery, SILVERMAN & MORRIS, West Bloomfield, Michigan,
for Appellee.

---

[*]The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting
by designation.

---

**OPINION**

---

FORESTER, Senior District Judge. This litigation arose from an amended petition for involuntary bankruptcy filed by the Plaintiffs-Appellants, Riverview Trenton Railroad Company ("RTRR") and Crown Enterprises, Inc. ("Crown"), and two other entities against DSC, Ltd. ("DSC"). The bankruptcy court ultimately dismissed the amended involuntary petition due to the lack of a sufficient number of qualified creditors under 11 U.S.C. § 303(b)(1). Relying on 11 U.S.C. § 303(c) which allows joinder at any time "before the case is dismissed," RTRR and Crown argue that the bankruptcy court erred by establishing and enforcing a joinder deadline which resulted in the exclusion of an additional petitioning creditor. RTRR and Crown also argue that the bankruptcy court erred in determining that they did not qualify as petitioning creditors under § 303(b)(1). For the reasons set forth below, the decision of the bankruptcy court, subsequently affirmed by the district court, will be **AFFIRMED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This bankruptcy appeal arises out of a series of complex land purchases and related agreements between DSC and various entities beginning in the late 1990s. The complete factual background has been extensively detailed by the courts below and will not be repeated herein. Instead, only the specific events relevant to the issues on appeal are described below.

On January 27, 2005, Crown, RTRR and other entities filed a petition for involuntary bankruptcy pursuant to 11 U.S.C. § 303 against DSC. In response, DSC argued that several of these entities were not creditors of DSC, but rather creditors of DSC's affiliates, and that some of the petitioners had not filed the involuntary bankruptcy petition in good faith.

Then, on February 16, 2005, Crown, RTRR, and two other entities filed an amended involuntary bankruptcy petition. This amended petition did not include the petitioning creditors whose status DSC had previously challenged. Again, DSC responded that some of the new petitioners were not qualifying petitioning creditors and did not file in good faith. On February 18, 2005, the bankruptcy court entered its order setting February 28, 2005 as the deadline for other DSC creditors to join the involuntary petition, and notifying DSC's creditors that they must file a "Notice of Joinder" on or before that date if they wanted to join the amended involuntary petition. The trial on the amended involuntary petition was scheduled for the next day -- March 1, 2005.

On February 28, 2005, O'Brien & Gere Engineers, Inc. ("O'Brien & Gere") notified DSC and the bankruptcy court via email that while they intended to join in the amended involuntary petition, they were unable to file joinder papers on that day. At the beginning of the trial on the next day, the petitioning creditors requested that O'Brien & Gere be allowed to join the amended involuntary petition; however, O'Brien & Gere still had not filed any notice of joinder and were not present at the trial. A notice of joinder on behalf of O'Brien & Gere was belatedly filed on March 1, 2005 after the court's deadline had expired. The bankruptcy court denied the joinder request on the grounds that O'Brien & Gere had a reasonable opportunity to join the petition, and that they had failed to meet the deadline.

The trial continued, intermittently, until April 12, 2005. On April 26, 2005, the bankruptcy court entered its order finding that Crown and RTRR were not qualified under 11 U.S.C. § 303(b)(1) as petitioning creditors because there was a genuine issue of material fact as to DSC's liability to Crown and RTRR and/or the amount of Crown's and RTRR's claims against DSC. Although the bankruptcy court did find that the other two petitioning creditors were qualified, because Crown and RTRR were not qualified there were an insufficient number of qualifying petitioning creditors to

pursue an involuntary bankruptcy against DSC under § 303(b)(1), which requires three creditors. As a result, the bankruptcy court dismissed the amended involuntary petition.

Crown and RTRR filed a motion for reconsideration with respect to dismissal of the amended involuntary petition, arguing first that the evidence, including an alleged settlement agreement in a related state court action and other agreements between DSC and the petitioning creditors, established the existence of a clear and binding claim against DSC sufficient to qualify Crown and RTRR as petitioning creditors under § 303(b)(1). Second, Crown and RTRR argued that the bankruptcy judge lacked authority to set a deadline for DSC's creditors to join the amended involuntary petition, and that O'Brien & Gere should have been allowed to join the amended involuntary petition as the third petitioning creditor. The motion for reconsideration was denied by the bankruptcy court on June 24, 2005.

In the meantime, a settlement was reached between DSC and O'Brien & Gere, and on June 7, 2005, O'Brien & Gere withdrew from participation in the bankruptcy proceeding. On July 1, 2005, Crown and RTRR filed an appeal of the bankruptcy court's dismissal of the amended involuntary petition with the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 158(a). The district court affirmed the decision of the bankruptcy court, and this appeal followed.

## II.     STANDARD OF REVIEW

This Court first must address DSC's argument that the appeal is moot based on O'Brien & Gere's settlement with DSC. Generally, appellate courts review the issue of mootness *de novo*. *See In re GWI PCS 1, Inc.*, 230 F.3d 788, 800 (5th Cir. 2000); *In re Western Pac. Airlines, Inc.*, 181 F.3d 1191, 1194 (10th Cir. 1999); *In re Filtercorp, Inc.*, 163 F.3d 570, 576 (9th Cir. 1998).

Dismissal of a bankruptcy case is reviewed for abuse of discretion. *In re Eastown Auto Co.*, 215 B.R. 960, 963 (B.A.P. 6th Cir. 1998). A bankruptcy court abuses its discretion when "it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Id*. The findings of a bankruptcy court which support dismissal of the bankruptcy case are factual determinations which are reviewed under the clearly erroneous standard. Fed.R.Bank.P. 8013. A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985); *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948). Conclusions of law are reviewed *de novo*. *In re Isaacman*, 26 F.3d 629, 631 (6th Cir. 1994)**.**

On appeal of a bankruptcy decision from a district court, the appellate court employs the same standards, evaluating the bankruptcy court's decision directly, without being bound by the district court's legal determinations. *In re Lowenbraun*, 453 F.3d 314, 319 (6th Cir. 2006); *In re M.J. Waterman & Associates, Inc.*, 227 F.3d 604, 607 (6th Cir. 2000); *In re Charfoos*, 979 F.2d 390, 392 (6th Cir. 1992).

## III.     INVOLUNTARY BANKRUPTCY PETITIONS AND 11 U.S.C. § 303

Essentially, Crown and RTRR are challenging the bankruptcy court's denial of O'Brien & Gere's joinder request and its finding that they were not qualifying petitioning creditors under 11 U.S.C. § 303(b)(1). Because DSC had more than twelve creditors, the filing of involuntary petitions is governed by 11 U.S.C. § 303(b), which provides in pertinent part:

An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title - -

(1)     by three or more entities, each of which is either a holder of a claim
        against such person that is not contingent as to liability or the subject
        of a bona fide dispute as to liability or amount, or an indenture trustee
        representing such a holder, if such noncontingent, undisputed claims
        aggregate at least $12,300 more than the value of any lien on
        property of the debtor securing such claims held by the holders of
        such claims;  . . . .

11 U.S.C. § 303(b)(1), as amended effective April 20, 2005.[1]  The burden rests on the petitioning
creditors to establish that they are qualified under § 303(b)(1).  *In re Eastown Auto Co.*, 215 B.R.
at 968.  To proceed under this section, at least three creditors must hold a claim against DSC that
is not contingent as to liability and that is not the subject of a bona fide dispute as to liability or
amount.  11 U.S.C. § 303(b)(1).  Congress has made clear that it "intended to disqualify a creditor
whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is
factual or legal."  *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986).  To determine whether
or not a claim is subject to a bona fide dispute, the Sixth Circuit Bankruptcy Appellate Panel has
established the following test:

> "If there is either a genuine issue of material fact that bears upon the debtor's
> liability, or a meritorious contention as to the application of law to undisputed facts,
> then the petition must be dismissed." . . . . In determining whether a claim is subject
> to a bona fide dispute, the bankruptcy court must not resolve any genuine issues of
> fact or law.

*In re Eastown*, 215 B.R.at 965 (quoting and citing *In re Lough*, 57 B.R. at 997).  Importantly, the
court need not resolve any genuine issues of fact or law; it only must determine that such issues
exist.  *In re Lough*, 57 B.R. at 997; *In re Everett*, 178 B.R. 132, 139 (Bankr. N.D. Ohio 1994).  The
bankruptcy court determined that Crown and RTRR did not have a noncontingent, undisputed claim
against DSC; therefore, Crown and RTRR were not qualifying petitioning creditors under
§ 303(b)(1).  Because there were only two qualifying petitioning creditors, and § 303(b)(1) requires
three, the bankruptcy court dismissed the amended involuntary petition.

Also at issue in this appeal is the decision of the bankruptcy court to deny joinder to O'Brien
& Gere as additional petitioning creditors.  Joinder of petitioning creditors is governed by 11 U.S.C.
§ 303(c).  This section provides:

> After the filing of a petition under this section but before the case is dismissed or
> relief is ordered, a creditor holding an unsecured claim that is not contingent, other
> than a creditor filing under subsection (b) of this section, may join in the petition
> with the same effect as if such joining creditor were a petitioning creditor under
> subsection (b) of this section.

11 U.S.C. § 303(c).  O'Brien & Gere's joinder request was not filed until after expiration of the
bankruptcy court's deadline for any notices of joinder to be filed and after the start of the trial.  As
a result, the bankruptcy court denied O'Brien & Gere's joinder request as untimely.

---

[1] According to the Historical and Statutory Notes to § 303: "This section and the amendments made by this
section [amending this section] shall take effect on the date of the enactment of this Act [Apr. 20, 2005] and shall apply
with respect to cases commenced under title 11 of the United States Code before, on, and after such date."  Thus, the
2005 amendments to 11 U.S.C. § 303 apply to this case.

IV.    ANALYSIS

A.    DSC'S SETTLEMENT WITH O'BRIEN & GERE DOES NOT MOOT THIS APPEAL.

On appeal, DSC argues that the appeal of the bankruptcy court's decision to deny joinder as to O'Brien & Gere has been rendered moot based upon DSC's settlement with O'Brien & Gere subsequent to the dismissal of the amended involuntary petition. Because Crown and RTRR failed to seek a stay of the dismissal order, DSC contends that it conducted its affairs as a non-debtor, including entering into the settlement with O'Brien & Gere. As a result, DSC argues that the settling creditors could be prejudiced and subjected to litigation for recovery of the settlement money should the bankruptcy court's order be reversed.

However, DSC's concerns over prejudice to its creditors do not moot the arguments of Crown and RTRR on appeal. A claim becomes moot only "when the plaintiff receives the relief sought or when it is factually, not legally, impossible to receive such relief." *Liberles v. Cook County*, 709 F.2d 1122, 1127 (7th Cir. 1983). The burden of demonstrating mootness is on DSC, and this burden requires a showing "that the outcome of this appeal could not affect the legal interests of the parties." *Ohio v. Madeline Marie Nursing Homes Nos. 1 and 2,* 694 F.2d 449, 463 (6th Cir. 1992).

DSC cannot satisfy its burden. Although DSC argues that its creditors may be prejudiced by the failure to obtain a stay of the dismissal order, DSC cannot show that Crown and RTRR will not be able to obtain any effective relief if this court reverses the bankruptcy court's dismissal of the involuntary bankruptcy petition. As a result this appeal, as a general matter, is not moot.

DSC also argues that O'Brien & Gere's post-dismissal settlement with DSC moots any appeal of the bankruptcy's court's refusal to grant O'Brien & Gere's belated joinder request. DSC contends that because O'Brien & Gere were never joined, they were entitled to withdraw, without court approval, at any time. However, the issue before this court is whether the bankruptcy court erred in refusing to allow O'Brien & Gere to join in the first instance, not whether they should be allowed to voluntarily withdraw at any time. Had the bankruptcy court permitted O'Brien & Gere's joinder as a qualified petitioning creditor, there would have been three qualified petitioning creditors sufficient to satisfy § 303(b)(1), and the petition should not have been dismissed. Thus, O'Brien & Gere's subsequent settlement and withdrawal does not affect this court's ability to review the bankruptcy court's decision to establish and enforce a joinder deadline.

B.    THE BANKRUPTCY COURT DID NOT ERR IN ESTABLISHING AND ENFORCING ITS JOINDER DEADLINE.

The Court now turns to the issue of whether the bankruptcy court erred when it imposed the February 28, 2005 deadline for DSC's creditors to join the amended involuntary petition and then denied the untimely notice of joinder filed by O'Brien & Gere. By setting the deadline, and then denying O'Brien & Gere's belated joinder request, O'Brien & Gere could not be counted as qualified petitioning creditors for the purpose of determining whether there was a sufficient number of creditors to pursue an involuntary petition against DSC. Crown and RTRR argue that under 11 U.S.C. §303(c), joinder is a matter of right before a case is dismissed or relief is ordered, and that the bankruptcy court may not impose any conditions on that right, including a deadline for joinder.

The bankruptcy court rejected Crown and RTRR's argument on two grounds. First, the bankruptcy court concluded that Crown and RTRR had waived the argument because they failed to object to the February 28, 2005 joinder deadline at any time before the Court entered its order dismissing the amended involuntary petition. Second, the bankruptcy court concluded that it has

the authority, under the Bankruptcy Code and applicable rules, to manage its caseload in an orderly, fair and efficient manner, including setting joinder deadlines. The bankruptcy court noted that Crown and RTRR specifically requested an expedited trial, and allowing joinder of any new creditor at any date after February 28, 2005 would not have been conducive to an orderly trial, set for the next day, and would have been unfair to DSC.

Turning first to the issue of waiver, the record reveals that the petitioning creditors never objected to the joinder deadline or argued that the bankruptcy court lacked any authority to set such a deadline until the filing of their motion for reconsideration. In fact, Crown and RTRR participated in the creation of the deadline, originally requesting a joinder deadline of February 23, 2005, which the bankruptcy court extended until February 28, 2005 at the request of DSC. At the beginning of the trial on the amended involuntary petition, Crown and RTRR failed to state any objection to the joinder deadline and acknowledged that O'Brien & Gere had reasonable notice and a reasonable time to file their notice of joinder. No one representing O'Brien & Gere was present when the trial began on March 1, 2005. By failing to raise the issue of the bankruptcy court's authority to set a joinder deadline during the pendency of the matter before the bankruptcy court, the petitioning creditors have waived this issue. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (objections raised for the first time in a reconsideration motion are deemed to have been waived).

Notwithstanding this waiver, the bankruptcy court did not err in establishing the joinder deadline and denying O'Brien & Gere's untimely joinder request. Section 303(c) states that "[a]fter the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor . . . may join in the petition with the same effect as if such joining creditor were a petitioning creditor. . . ." 11 U.S.C. §303(c). On its face, the statute gives O'Brien & Gere the right to join a petition anytime after it is filed and before it is dismissed or relief is ordered. The bankruptcy court, however, relied on the Federal Rules of Bankruptcy Procedure and its inherent authority to set deadlines to justify establishing and enforcing the joinder deadline. Specifically, the bankruptcy court relied on Rule 1003(b) of the Federal Rules of Bankruptcy Procedure, which states:

> (b)          Joinder of petitioners after filing. If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in § 303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

Fed.R.Bank.P. 1003(b). "Any such joinder occurs in the context of expeditious litigation mandated" by Rule 1013(a) of the Federal Rules of Bankruptcy Procedure. *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1061 (9th Cir. 2002). Rule 1013(a) provides that "[t]he court shall determine the issues of a contested [involuntary] petition at the earliest practicable time and forthwith" enter an appropriate dispositive order. Fed.R.Bank.P. 1013(a). Thus, in a case such as this, where there are more than 12 creditors, Rule 1003(b) requires the bankruptcy court to afford reasonable notice to other creditors while simultaneously resolving the merits of the involuntary petition "at the earliest practicable time." *Id.*

Thus, there is tension between the statutory right of joinder created by § 303(c) and the rules of procedure the bankruptcy court is bound to enforce. The Bankruptcy Appellate Panel for the Sixth Circuit was faced with the issue of whether setting a deadline for creditors to join an involuntary petition violates § 303(c) in the case of *In re Eastown Auto Co.*, 215 B.R. 960. The court, however, avoided the issue because it found that no creditors had sought to join the petition prior to the trial court's dismissal of the involuntary petition. *Id*. at 970.

The issue is now squarely before this Court. While § 303(c) allows joinder "before the case is dismissed or relief is ordered," the Court agrees with the bankruptcy court's holding that the statute "merely sets an absolute, outside limit on the time within which certain qualifying creditors may join an involuntary petition. It means that a would-be joining creditor must join, if at all, before the Court has dismissed an involuntary bankruptcy petition." The statute does not prohibit a court from setting an earlier deadline, based upon its case management authority, in order to ensure orderly, fair, and efficient proceedings. This is especially true in the context of an involuntary bankruptcy proceeding, where the court is required to expedite such proceedings. Fed.R.Bank.P. 1013(a). Accordingly, for these reasons and the reasons set forth in the bankruptcy court's Order denying the petitioning creditors' motion for reconsideration, the Court finds that the bankruptcy court did not err in establishing and enforcing the February 28, 2005 joinder deadline. The decision of the bankruptcy court establishing and enforcing the joinder deadline will be affirmed.

### C.   THE BANKRUPTCY COURT DID NOT ERR IN HOLDING THAT CROWN AND RTRR WERE NOT QUALIFIED PETITIONING CREDITORS UNDER § 303(b)(1).

After denying O'Brien & Gere's belated joinder request, the bankruptcy court was left with only four petitioning creditors: Crown, RTRR, Voest Alpine Industries, Inc. ("Voest"), and Ebner Furnaces, Inc. ("Ebner"). The bankruptcy court found that Voest and Ebner were qualified petitioning creditors under § 303(b)(1), and that finding has not been challenged on appeal. At the conclusion of the trial of this matter, the bankruptcy court concluded that Crown and RTRR did not qualify as petitioning creditors, and thus dismissed the amended involuntary petition for an insufficient number of qualified petitioning creditors pursuant to § 303(b)(1).

Crown and RTRR have appealed the bankruptcy court's finding that they were not qualified petitioning creditors on two grounds. First, Crown and RTRR argue that a settlement agreement reached in a state court action against DSC and others creates a noncontingent undisputed claim against DSC sufficient to confer petitioning creditor status on Crown and RTRR. Second, Crown and RTRR make an alternative argument that certain pre-settlement agreements, namely the Environmental Obligations Implementation Agreement ("EOIA") and the Right of First Refusal Agreement ("RFRA"), are sufficient to confer qualifying petitioning creditor status against DSC.

The bankruptcy court heard testimony and argument on Crown and RTRR's claim against DSC based on the settlement agreement, the EIOA, and the RFRA and determined that none of these agreements set out a noncontingent, undisputed claim against DSC. Because Crown and RTRR did not qualify as petitioning creditors, the bankruptcy court then dismissed the amended involuntary petition for an insufficient number of qualified creditors under § 303(b)(1).

After carefully considering the record on appeal, the briefs of the parties, and the applicable law, and having had the benefit of oral argument, this Court finds that the bankruptcy court was not clearly erroneous in its holding that Crown and RTRR were not qualified petitioning creditors under § 303(b)(1). The bankruptcy court has clearly articulated its rationale in its bench opinion of April 26, 2005, and further analysis by this court would be redundant and unnecessary. Accordingly, the bankruptcy court's decision denying qualified petitioning creditor status to Crown and RTRR and dismissing the amended involuntary petition for an insufficient number of qualified creditors under § 303(b)(1) will be affirmed.

## V.   CONCLUSION

For the reasons set forth above, the decision of the bankruptcy court dismissing the amended involuntary bankruptcy petition is **AFFIRMED**.