*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  10b0004n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: NINA HOLLINSHEAD, | ) | |
| | ) | |
| Debtor. | ) | No. 09-8058 |
| ——————————————— | ) | |
| | ) | |
| | ) | |
| JEFF A. MOYER, CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NINA HOLLINSHEAD, | ) | |
| | ) | |
| Appellee. | ) | |
| ——————————————— | ) | |

Appeal from the United States Bankruptcy Court
for the Western District of Michigan
Case No. 08-11303

Submitted:  February 3, 2010

Decided and Filed:  March 3, 2010

Before:  FULTON, HARRIS, and RHODES, Bankruptcy Appellate Panel Judges.

—————————————

### COUNSEL

**ON BRIEF:**  Jeff A. Moyer, THE BANKRUPTCY GROUP, INC., Wyoming, Michigan, for
Appellant.  Nina Hollinshead, Muskegon, Michigan, for Appellee.

---

**OPINION**

---

ARTHUR I. HARRIS, Bankruptcy Appellate Panel Judge. In this case, Jeff A. Moyer, Chapter 7 Trustee, ("Trustee") appeals an order of the bankruptcy court overruling his objection to Nina Hollinshead's ("Debtor") claim of exemption. The bankruptcy court held that the Debtor was entitled to exempt her full 2008 tax refund pursuant to 11 U.S.C. § 522(d)(5) despite her failure to disclose that she was entitled to a refund at the time she filed her petition for relief or at the first meeting of creditors. For the reasons that follow, we AFFIRM the order of the bankruptcy court.

## I.   ISSUE ON APPEAL

Whether the bankruptcy court erred when it found that the record before it failed to support the Trustee's contention that the Debtor's failure to disclose her tax refund on her original schedules and at the first meeting of creditors was in bad faith thereby warranting denial of her claim of exemption.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order on an objection to a debtor's claim of exemption is a final order for purposes of appeal. *See Moyer v. Dutkiewicz (In re Dutkiewicz)*, 408 B.R. 103, 105 (B.A.P. 6th Cir. 2009).

The bankruptcy court's conclusions of law are reviewed *de novo*. *See Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial

court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). The court's findings of fact are reviewed under the clearly erroneous standard. *See In re DSC, Ltd.*, 486 F.3d at 944. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

### III.   FACTS

The Debtor, *pro se*, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 18, 2008. She did not disclose an entitlement to a tax refund on Schedule B, nor claim an exemption on Schedule C for any tax refund to be generated by the filing of her 2008 tax returns. Rather, she checked "none" on Schedule B, line 21, which requests the estimated value of "[o]ther contingent and unliquidated claims of every nature, including tax refunds[.]"[1] Just prior to the first meeting of creditors, the Trustee requested that the Debtor complete a questionnaire regarding various assets, transactions, and tax returns and refunds. In response to the question, "Are you entitled to any more tax refunds at this time from either the State or IRS for this year, this past year, or any other previous years?," the Debtor checked the "no" box. (App. at Tab 16, p. 5.) Moreover, when the first meeting of creditors was held on January 27, 2009, the Debtor responded affirmatively to the Trustee's questions regarding whether her schedules contained a complete list of all property and assets she owned, whether she had read the petition and schedules before she signed them, whether she understood at the time she signed the petition that she was signing it under penalty of perjury, and whether to the best of her knowledge, the schedules were truthful and accurate. When asked whether there were any errors, omissions, or mistakes in her schedules, or corrections to be made, the Debtor answered in the negative. Two days following the first meeting of creditors, the Debtor filed her 2008 tax returns which resulted in a $6,956 refund.

On March 4, 2009, the Trustee filed a motion to compel turnover of the Debtor's tax refunds.[2] In response to the Trustee's motion, the Debtor wrote a letter to the bankruptcy court

---

[1] The Debtor received a total tax refund of $5,509 for the year 2006, and $5,371 for the year 2007 from the IRS alone.

[2] It is unclear from the record before us how the Trustee came to learn of the $6,956 refund.

explaining that after receiving her tax refund on February 23, 2009, she paid certain utility bills, purchased health supplies, and bought clothing for her children because "I wasn't aware that all of my refund would be turned over, as I thought it was considered 'wild card cash' since I owe more than my house is worth." (App. at Tab 4.) She further explained that after receiving a letter from the Trustee regarding the refund, she sent him a check for the $2,232.79 that she had not spent.

On April 1, 2009, the bankruptcy court held a hearing on the Trustee's motion to compel turnover. At the hearing, the bankruptcy court explained to the *pro se* Debtor: "You then may, if you choose, amend your schedules, both B and C, to reflect this refund, and then claim it as exempt." (App. at Tab 23, p. 5.) On April 10, 2009, the bankruptcy court issued an order granting the motion and ordering the Debtor to turnover to the Trustee the non-exempt portion of her tax refund that she had not already accounted for "to the extent that same are in her possession, custody or control. Otherwise, Debtor shall account to Trustee for the same." (App. at Tab 6.)

On April 9, 2009, the Debtor filed an amendment to her Schedules B and C in which she amended Schedule B, line 21 to "include a 2008 federal and State tax refund in the amount of $6956.00" and to "[e]xempt tax refund 522(d)(5) the value of $6956.00." (App. at Tab 5.) The Trustee objected to the amended exemption on April 27, 2009.[3] The Trustee objected to the exemption because the Debtor delayed claiming the exemption for four months and did not disclose her entitlement to the refund until she filed the amendment. He asserted that the Debtor's amended exemption violated the time limits set forth in Federal Rules of Bankruptcy Procedure 4003(a) and 1007(c), that the Debtor's attempt to amend her exemptions belatedly was done in bad faith or in reckless indifference to the accuracy and completeness of her schedules, that the Debtor was estopped from claiming the exemption because the Trustee had already begun to administer the asset, that the Debtor was unable to claim the exemption because the funds had been spent thereby removing them from the estate, and, finally, that by using the funds without court authority the Debtor had violated the automatic stay.

The bankruptcy court held a hearing on the Trustee's objection on August 3, 2009, at which the Debtor was the only witness. At the hearing, the Trustee abandoned all of his theories as to why

---

[3] The Debtor had not exhausted the total exemption amount available to her under 11 U.S.C. § 522(d)(5).

the exemption was not allowed, with the exception of the bad faith or reckless indifference theory. The Debtor testified that she had no material changes from the two years prior to 2008 which would affect the amount of her tax refund except for increasing the number of claimed dependents from zero to two in the fall of 2008. She also confirmed that she had indeed completed the Trustee's questionnaire and answered the Trustee's questions at the first meeting of creditors as described above. The Debtor also testified that she prepared her petition and schedules with the assistance of a bankruptcy petition preparer, and that she filed her tax return two days after the first meeting of creditors because the Trustee told her that she must in order to close her bankruptcy case. In explaining why she used the term "wild card cash" in her letter to the court, the Debtor testified:

> I believed that if I would've had the cash on me back in December when I filed my taxes, I could've used any amount of refund if I would have had it then as wild card cash because I didn't have hardly any cash on me. And I thought at the moment when I wrote this letter that that's kind of what I was supposed to do at that time instead of amending my schedules.[4]

(App. at Tab 24, p. 16.)

The Debtor concluded her testimony by explaining to the bankruptcy court that:

> I know all of those questions, like have you filed all the tax returns you are required to file, at that time when I filled everything out I had filled it out to the best of my knowledge. I didn't believe I was entitled to any tax refunds because I hadn't filled out my taxes yet and it was still early in the year.

(App. at Tab 24, p. 19-20.)

On September 9, 2009, the bankruptcy court issued a bench opinion in which it overruled the Trustee's objection and treated the Debtor's exemption of her entire 2008 refund as allowed. The court issued a written order on September 11, 2009, overruling the Trustee's objection and ordering the Trustee to account to the Debtor for whatever the Debtor had turned over to him with respect to her 2008 federal and state tax returns. The Trustee's timely appeal followed.

---

[4] The Debtor explained that she probably learned the term "wild card cash" while searching the Internet for information on bankruptcy.

## IV.  DISCUSSION

A debtor may generally amend a voluntary petition schedule as a matter of course at any time before the case is closed.  Federal Rule of Bankruptcy Procedure 1009(a); *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984).   However, the bankruptcy court may refuse to allow a debtor to amend his or her exemptions where the debtor has acted in bad faith or concealed property.  *Lucius*, 741 F.2d at 127.  "In the context of an amendment of exemptions, bad faith is determined by an examination of the totality of the circumstances.  Mere allegations of bad faith will not suffice; the objecting party must demonstrate the bad faith of the debtor by specific evidence."  *In re Colvin*, 288 B.R. 477, 481-82 (Bankr. E.D. Mich. 2003) (citing *Kaelin v. Bassett (In re Kaelin)*, 308 F.3d 885 (8th Cir. 2002); *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 255 (B.A.P. 9th Cir. 1988); *Brown v. Sachs (In re Brown)*, 56 B.R. 954, 958 (Bankr. E.D. Mich. 1986)).

In support of his position that the Debtor should be denied her claim of exemption in her tax refund, the Trustee points to the incorrect or false information concerning her entitlement to a tax refund on her schedules, on the Trustee's questionnaire, and at the first meeting of creditors.  He also points to the Debtor's letter to the bankruptcy court in which she stated "I wasn't aware that all of my refund would be turned over, as I thought it was considered 'wild card cash' since I owe more than my house is worth."  He argues that this "clearly was not a statement from a Debtor thinking she wasn't <u>getting</u> any tax refunds for 2008, just that she had already decided, however wisely or unwisely, ***not*** to disclose them." (Appellant's Br. at 8-9.)  The Trustee emphasizes that the Debtor did not amend her schedules until four months after she filed her petition, 72 days after the first meeting of creditors, and 70 days after filing her tax returns.  However, as he notes, she amended her schedules 8 days after the hearing on his motion for turnover at which the bankruptcy court suggested to the Debtor that she do so and seek exemption.  According to the Trustee, "[i]t is clear from reading all of the transcripts that the ***only*** reason the Debtor ultimately amended her schedules to disclose the existence of her 2008 tax refunds was based on the Court's instructions at the hearing on the motion to compel turnover." (Appellant's Br. at 13.)

The Trustee further argues that the Debtor is attempting to avail herself of a defense of poor advice even though she did not use the services of an attorney.  He asserts that the Debtor's "surprisingly precise recitation of Fed. R. Bankr. P. 1009(a) at trial" reveals that she "had been

provided legal advice from someone, however poor that advice might have been." (Appellant's Br. at 9.) He then argues that any such attempted defense should be dismissed because reliance on whatever legal advice she may have obtained was not reasonable and in good faith as the schedules make it transparently plain to debtors that they are required to disclose tax refunds.

In her brief submitted to this Panel, the Debtor has maintained her position that she acted in good faith when she submitted her original schedules, as well as when she completed the Trustee's questionnaire, and in answering the Trustee's questions at the first meeting of creditors.

Following the August 3, 2009, evidentiary hearing, the bankruptcy court found that the record before it was insufficient to support the Trustee's contention that the Debtor intentionally or recklessly failed to disclose her entitlement to a 2008 tax refund. As a result, it overruled the Trustee's objection to the Debtor's exemption and allowed the Debtor's exemption of the entire refund. In reaching its conclusion the court made a number of pertinent findings. First, it found that the Debtor is intelligent and capable of understanding what was required of her in preparing her schedules. Second, the court also stated that it did not believe the Debtor's testimony that the change in exemptions from zero to two in the fall of 2008 was justification for her reporting "none" as her estimate of expected tax refund.[5] The court also took into account that the Debtor was assisted by a bankruptcy petition preparer, which the court believed may have led the Debtor to not be as careful as she might have been if she had prepared the petition and schedules on her own. In addition, the court noted that there was little evidence in the record of the Debtor's intentions other than the omission itself.

The Trustee takes issue with the bankruptcy court's statement that the Debtor was not "entitled" to a refund because she had not yet completed her tax returns; however, this argument is of no avail. At issue is not whether the Debtor's right to a refund was contingent on her completing her tax return and requesting a refund.[6] Rather, the issue is whether the Debtor acted in bad faith in failing to disclose this asset. Clearly, the Debtor's right to a 2008 tax refund constitutes property of

---

[5] In her brief, the Debtor maintains her position that she believed this change in exemptions may have left her without a 2008 refund.

[6] *See* 26 U.S.C. §6511(b); M. Saltzman, *IRS Practice and Procedure*, ¶¶11.01 and 11.05. "No refund is permitted to be made at all unless a claim for refund is filed." *Id.* at ¶11.05.

the Debtor's estate which the Debtor had a duty to disclose on Schedule B. Indeed, even though the amount of the refund may have been unknown as of the petition date, Line 21 of Schedule B specifically requires the disclosure of "[o]ther contingent and unliquidated claims of every nature, including tax refunds." The bankruptcy court, the Debtor, and the Trustee all agree that this was an asset the Debtor should have disclosed. Where the bankruptcy court and the Trustee disagree is whether the Trustee met his burden of demonstrating that the Debtor acted in bad faith in failing to disclose this asset.

The court noted that the Trustee clearly knew of the impending refund as he filed his motion to compel turnover of the funds, and there is nothing in the record which reveals how the Trustee learned of the refund. The bankruptcy court speculated that it may have in fact been the Debtor who informed the Trustee, perhaps sending him a copy of her return when it was filed because, as her uncontested testimony revealed, it was the Trustee who prompted her at the first meeting of creditors to file a return quickly by telling her that her case could not be closed until one was filed. The court concluded that speculation by stating:

> But in any event, there is not enough in the record to support a finding that [Debtor] did not disclose to Trustee her entitlement to the refund when she first learned of it herself, and because it is the Trustee who bears the burden of establishing the sanctionable conduct in this instance, it is not appropriate to sanction [Debtor] for what happened after [Debtor] became aware of the refund either.

(App. at Tab 17, p. 17.)

In reviewing the order of the bankruptcy court, we are guided by the Sixth Circuit Court of Appeals which, in reviewing a similar case wherein the bankruptcy court denied a debtor's amended schedules to exempt a tax refund, stated:

> We emphasize that Bankruptcy Rule 8013 requires that 'due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.' Based on the record and deferring to the judge's determination of debtor's credibility, we, therefore, AFFIRM the bankruptcy judge's denial of the amendment and the district court's judgment.

*In re Millsaps*, 774 F.2d 1163, 1985 WL 13737 at *2 (6th Cir. 1985) (unpublished table decision). Additionally, as the Panel has previously explained:

> The clearly erroneous standard does not permit this Panel to substitute its assessments of credibility in place of the explicit findings made by the bankruptcy court. When differing views of the evidence are possible, the bankruptcy court's findings cannot be clearly erroneous. As long as the trial court's findings are "reasonable and supported by the evidence," they may not be overturned.

*Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 334 (B.A.P. 6th Cir. 2007) (citations omitted).

Although the Trustee argues that the facts in this case mirror those in *Millsaps*, the debtor in *Millsaps* "only disclosed the existence of the tax refund upon discovery that he *personally* would not receive it directly from I.R.S." 1985 WL 13737 at *2. Moreover, in affirming the bankruptcy judge's denial of the amendment and the district court's judgment, the Sixth Circuit in *Millsaps* noted several instances in which the debtor's credibility had been damaged and emphasized that it was deferring to the judge's determination of the debtor's credibility. *Id.* In the present case, however, the requirement that we give due deference to the judge's determination of the Debtor's credibility weighs against the Trustee.

The bankruptcy court's findings in this case are both reasonable and supported by the evidence. There was no evidence presented regarding the Debtor's intention other than the omission itself. The bankruptcy court had the opportunity to assess the Debtor's credibility when she testified, and we cannot substitute our assessment of her credibility for that of the bankruptcy court. Based upon the record before us, and deferring to the bankruptcy court's determination of the Debtor's credibility, we conclude that the bankruptcy court did not err in finding that the record failed to support the Trustee's contention of bad faith on the part of this Debtor.

## V. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.