*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  10b0007n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:  CARL E. PERTUSET and<br>VERA PERTUSET,<br><br>Debtors.<br>_____<br><br>CARL E. PERTUSET and<br>VERA PERTUSET,<br><br>Appellants,<br><br>v.<br><br>AMERICAN SAVINGS BANK, FSB<br><br>Appellee.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 10-8024 |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, at Cincinnati.
Case No. 09-17636

Decided and Filed:  August 24, 2010

Before:  HARRIS, McIVOR, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF**:  Susan M. Argo, GRAYDON HEAD & RITCHEY LLP, Cincinnati, Ohio, for
Appellee.  Carl E. Pertuset, Vera Pertuset, McDermott, Ohio, pro se.

OPINION

ARTHUR I. HARRIS, Bankruptcy Appellate Panel Judge. In this appeal, Carl E. Pertuset and Vera Pertuset ("Debtors") appeal the bankruptcy court's order dismissing their petition for relief under Chapter 12 of the Bankruptcy Code. The bankruptcy court dismissed the case pursuant to 11 U.S.C. § 1208(c)(3) and (c)(9) because the Debtors failed to file a plan as required under 11 U.S.C. § 1221, and due to continuing diminution of the estate and the absence of a reasonable likelihood of rehabilitation. For the reasons that follow, we AFFIRM the order of the bankruptcy court.

## I.   ISSUE ON APPEAL

Whether the bankruptcy court erred in dismissing the Debtors' Chapter 12 case pursuant to 11 U.S.C. § 1208(c)(3) and (c)(9).

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). The bankruptcy court's order dismissing the Debtors' case is a final, appealable order. *In re Anderson*, 397 B.R. 363, 365 (B.A.P. 6th Cir. 2008).

The bankruptcy court's dismissal of the Debtors' case is reviewed for abuse of discretion. *Id*. An abuse of discretion is established when the reviewing court is left with a definite and firm conviction that the court below committed a clear error of judgment. *Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n,* 524 F.3d 726, 739 (6th Cir. 2008). "'An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *Kaye v. Agripool, SRL* (*In re Murray, Inc.*)*,* 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (quoting *Volvo Commercial Fin. LLC the Americas v.*

*Gasel Transp. Lines, Inc.* (*In re Gasel Transp. Lines, Inc.*)*,* 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005)). In determining whether an abuse of discretion has occurred, we ask "'whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.'" *Id.* (quoting *Mayor and City Council of Baltimore, Md. v. West Virginia* (*In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002).

The bankruptcy court's conclusions of law are reviewed *de novo*. *See Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted). The court's findings of fact are reviewed under the clearly erroneous standard. *See In re DSC, Ltd.*, 486 F.3d at 944. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *Anderson v. City of Bessemer City*, *North Carolina*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

### III. FACTS

The Debtors, *pro se*, filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code on November 16, 2009. Several days later, the Debtors moved to employ attorney George Leicht ("Leicht") on their behalf. A meeting of creditors was held on January 15, 2010, at which the Debtors were represented by Leicht. On January 19, 2010, Leicht filed a motion to dismiss the Debtors' case. On February 1, 2010, the Debtors, *pro se*, filed a motion to withdraw the motion to dismiss citing a "mistake," and moving to terminate Leicht. On February 2, 2010, Leicht filed a motion to withdraw as counsel for the Debtors. His motion was granted on February 19, 2010.

On February 26, 2010, American Savings Bank, FSB ("ASB"), a creditor of the Debtors by virtue of several loans totaling over $300,000, filed a motion to dismiss the Debtors' case pursuant to 11 U.S.C. § 1208(c)(1) for gross mismanagement of the estate, § 1208(c)(3) for failure to timely file a plan, § 1208(c)(9) for continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation, and because the Debtors allegedly fail to satisfy the requirements of a family farmer for filing under Chapter 12 as set forth in § 109(f). On March 23, 2010, the Debtors

filed an untimely response to the motion to dismiss. On April 7, 2010, they filed a "Notice of Mistake" in which they asserted that they had inadvertently overlooked the need to file a repayment plan, and purported to set forth a plan. The purported plan set forth in the "Notice of Mistake" was untimely and did not comply with 11 U.S.C. § 1222.

The bankruptcy court held a hearing on ASB's motion to dismiss on April 8, 2010, at which Carl E. Pertuset ("Pertuset") testified. On April 9, 2010, the bankruptcy court issued an order granting the motion to dismiss the Debtors' Chapter 12 case pursuant to § 1208(c)(3), failure to timely file a plan, and (c)(9), continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation. Because the court found that the case should be dismissed pursuant to § 1208(c)(3) and (c)(9), it declined to address the issue of whether the Debtors satisfy the requirements of a family farmer for filing under Chapter 12 as set forth in § 109(f).

On April 15, 2010, the Debtors timely filed a notice of appeal of the bankruptcy court's order dismissing their case.

## IV. DISCUSSION

A. *Failure to Timely File Repayment Plan*

The Debtors filed their petition for relief under Chapter 12 of the Bankruptcy Code on November 16, 2009. 11 U.S.C. § 1221 required that they file a repayment plan not later than 90 days after filing their petition, or February 16, 2010. The Debtors did not timely file a plan as required.

On April 7, 2010, the Debtors filed a "Notice of Mistake" in which they asserted that they had inadvertently overlooked the need to file a repayment plan, and purported to set forth a plan. This untimely purported plan in no way complied with the requirements for a Chapter 12 plan set forth in 11 U.S.C. § 1222. Rather, this "plan" simply generically stated that creditors would be paid pro rata at the interest rate of 6% "if no post-confirmation interest rate is stated for a creditor . . . ." In fact, Pertuset testified at the hearing on the motion to dismiss that he had not filed a *complete* Chapter 12 plan.

In their brief submitted to this Panel, the Debtors argue that the bankruptcy court erred in dismissing their case based upon the failure to timely file a plan because they paid the required filing

fees. 11 U.S.C. § 1208(c)(3), however, provides that on request of a party in interest, the bankruptcy court may dismiss a case under Chapter 12 for failure to file a plan timely under § 1221. Because the Debtors failed to timely file a plan, the bankruptcy court did not err in dismissing the Debtors' case pursuant to 11 U.S.C. §1208(c)(3). The Debtors' argument regarding the payment of filing fees is irrelevant because the court did not dismiss their case for failure to pay the fees.

B.    *Continuing Loss to Estate and Absence of Reasonable Likelihood for Rehabilitation*

11 U.S.C. § 1208(c)(9) provides that on the request of a party in interest, the bankruptcy court may dismiss a Chapter 12 case for cause, including "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation . . . ." After hearing the testimony of Pertuset, the bankruptcy court concluded that the Debtors "do not have a reasonable prospect for cash flow sufficient to fund a Chapter 12 plan. As such, there is continuing loss to the estate and no reasonable likelihood for rehabilitation."

In their purported plan, the Debtors state that they will fund their plan through the liquidation of an accounts receivable - a multi-billion dollar maritime judgment lien assigned for the benefit of creditors. The Debtors had been assigned a partial interest in this maritime judgment lien allegedly worth $1.75 million, and proposed to collect on the judgment lien to pay their creditors. The bankruptcy court found, however, that collection of the lien is "subject to a litany of issues which would hinder the Debtors in attempting to liquidate it as an asset." Because it found that the lien has been avoided by the United States Bankruptcy Court for the Middle District of Alabama, and the Debtors paid no consideration for their interest in it, the court questioned the legitimacy of the lien, finding it "dubious at best," and calling into doubt the Debtors' ability to liquidate it.

In their appeal to this Panel, the Debtors argue that the bankruptcy court erred in dismissing their case pursuant to 11 U.S.C. § 1208(c)(9) because: (1) consideration in the form of 21 silver dollars was in fact given in consideration for the maritime lien assignment as allegedly evidenced by the affidavit of assignment; (2) that despite their presentation of valid insurance coverage the bankruptcy court incorrectly found that they "failed to provide convincing evidence of full insurance coverage;" (3) the bankruptcy court ignored testimony of Pertuset regarding the actions of Quality Car & Truck Leasing ("Quality") in regard to obtaining insurance coverage; (4) the court failed to accept the assignment of the maritime lien, which was allegedly valid and properly filed with the

Washington Secretary of State, UCC Division, as an asset sufficient to pay all of the Debtors' creditors; and (5) the Debtors qualify as Chapter 12 debtors.

The Debtors' assertion that consideration was given for the maritime lien assignment fails for two reasons. First, the Assignment of Maritime Judgment Lien itself states that it was Pertuset's *intent* to deliver 21 silver dollars "at a point in time in the future," not that the consideration had in fact been given. Second, at the April 8, 2010, hearing, Pertuset testified that he did not pay anything for the assignment. In fact, he testified that it was a gift from a friend.

The Debtors' arguments regarding Quality, and the issue of proof of insurance coverage on Quality's collateral are irrelevant to this appeal. Quality is a secured creditor of the Debtors that holds liens on equipment owned by the Debtors. Quality moved for relief from the automatic stay on March 5, 2010, because the Debtors had not provided proof of insurance on the collateral and Quality alleged it was not adequately protected. The hearing held by the bankruptcy court on April 8, 2010, addressed both ASB's motion to dismiss the Debtors' case *and* Quality's motion for relief from stay. The bankruptcy court issued a separate order on April 9, 2010, granting Quality's motion for relief from stay finding that the Debtors "failed to provide convincing evidence of full insurance coverage on Quality's collateral." The Debtors, however, did not appeal that order. They appealed only the order granting ASB's motion to dismiss the case. Because the bankruptcy court did not base its dismissal of the case on the lack of adequate insurance coverage, the Debtors' arguments concerning insurance coverage are irrelevant here.

The Debtors' argument regarding the validity of the assignment of the maritime lien also fails. Included with the purported lien documents is an order of the United States Bankruptcy Court for the Middle District of Alabama dated February 11, 2009, finding that the liens are "invalid, illegal, and wholly without support or merit," and avoiding the lien. This order, combined with the Debtors' failure to provide consideration for the assignment of a $1.75 million interest in a maritime lien, calls the legitimacy and ability of the Debtors to collect into serious question.

Finally, the Debtors' arguments regarding whether they qualify as Chapter 12 debtors are also irrelevant. The bankruptcy court based its decision to dismiss the case on 11 U.S.C. § 1208(c)(3) and (c)(9), not on whether the Debtors qualify for Chapter 12 relief. Having dismissed the case

pursuant to § 1209(c)(3) and (c)(9), the court specifically declined to address the Debtors' qualification as debtors under Chapter 12.

The bankruptcy court did not abuse its discretion in dismissing the Debtors' case under § 1208(c)(9). At the hearing, Pertuset testified regarding his prospects for securing business and generating regular income to fund a plan. Pertuset harvests and sells timber. While he harvests some timber from his own property, the timber he sells is primarily harvested from the land of others. He does not have contracts for sale of the timber, but rather he has four "markets" to which he sells leaving him dependent upon market conditions. Additionally, while Pertuset testified that he had recently sold loads of timber, he acknowledged that based upon the amount he clears on each load, he cannot fund a Chapter 12 plan. In fact, after providing vague answers to numerous questions, Pertuset gave the straightforward answer of "[a]bsolutely not" to the question: "[A]s we sit here today, do you have the ability to put any money through a plan and pay your creditors?" In sum, Pertuset's testimony revealed that there is a continuing loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation. Based upon the documentary evidence regarding the assignment of maritime lien with which the Debtors proposed to fund a Chapter 12 plan, and the testimony of Pertuset at the April 8, 2010, hearing, we conclude that the bankruptcy court did not abuse its discretion in dismissing the Debtors' Chapter 12 case.

## V. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.